Filed 8/20/20 In re W.R. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re W.R. et al., Persons Coming Under the Juvenile Court Law. | B304013, B304856 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. Nos. 18LJJP00452B-C) |
| Plaintiff and Respondent, | |
| v. | |
| W.R., | |
| Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, Michael C. Kelley, Judge. Affirmed.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Father W.R. has filed five appeals from orders concerning his dependent children, including these two consolidated appeals. (See *In re W.R.* (Aug. 6, 2019, B292121, B294990) [nonpub. opn.]; *In re P.R.* (Aug. 2, 2019, B293713) [nonpub. opn.].) In these consolidated appeals, father challenges the order removing his now nine- and 10-year-old sons from his care, following the order sustaining a subsequent petition pursuant to Welfare and Institutions Code section 342.[1] He also challenges the dispositional orders requiring him to complete services he had already completed, and the order limiting his educational rights to his two younger sons. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

We draw the following facts from an earlier opinion. (See *In re W.R.*, *supra*, B292121, B294990.)

This family came to the attention of the Los Angeles County Department of Children and Family Services (Department) on June 22, 2018, after the Department received a referral of a domestic violence incident between father and his girlfriend, O.E. Father's four sons and O.E.'s daughter from a previous relationship were in the home at the time of this domestic violence incident.

Father and O.E. engaged in numerous incidents of domestic violence in front of the children. Sometimes O.E. was the aggressor, and other times father was the aggressor.

Father had diagnoses for bipolar disorder and schizophrenia. He was prescribed Seroquel, but stopped taking the medication in 2016 because it made him drowsy. Father takes Hydrocodone for injuries he received years earlier during a robbery. He admitted he self-medicates his mental health problems with his pain medication, and sometimes abuses his medication.

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

Father has sole legal and physical custody of his three older sons. Their mother, S.M., has not been involved in their lives for years. Father and S.M. also had a history of domestic violence.

The family has a history with the Department, with numerous referrals in 2010, 2013, and 2016, all related to drugs and domestic violence. Father also has an extensive criminal record, spanning from 1992 to 2016, with numerous arrests and convictions. Father has served time in prison.

On July 19, 2018, the Department filed a dependency petition with allegations under subdivisions (a) and (b) of section 300, based on domestic violence between father and O.E. The petition was later amended to allege that father abused his prescription medication, and has a history of mental health problems but failed to take his psychotropic medication.

The adjudication/disposition hearing was held on August 16, 2018. The juvenile court sustained allegations under subdivision (b) of section 300 based on the history of domestic violence, father's mental health, and prescription drug abuse.

The children were placed with father, under the supervision of the Department. Father was ordered to participate in family maintenance services, including random and on-demand drug testing, a full drug program if he tested positive or missed a test (for drugs other than his prescription medications at the proper dosage), a domestic violence support group, parenting classes, an Evidence Code section 730 evaluation, individual counseling, and to take all prescribed psychotropic medications.

The Department received reports that father and O.E. were in contact in violation of a criminal protective order. Therefore, on October 10, 2018, the Department filed a supplemental petition pursuant to section 387, and the children were detained in foster care.

New concerns about the children arose. Father's 15-year-old son was generally well behaved and respectful, but he was very nervous when answering simple questions. He also had been suspended for violent altercations with other students at school. The 10-year-old had significant behavioral problems at school, including violent outbursts. The school had been attempting to secure services for him since 2014, but father would not consent, and was "belligerent" during conversations with school staff. The nine-year-old also appeared to have anger issues. Father refused to have him assessed for mental health services, and was belligerent and uncooperative with school officials. The child was sent to the principal's office daily, and was often out of control. The school stopped contacting father because he was so uncooperative and unsupportive.

The adjudication hearing on the supplemental petition was held on October 31, 2018. The juvenile court sustained the petition and removed the children from father. The court ordered father to participate in the same services previously ordered.

Father appealed the orders on the original and supplemental petitions, challenging the juvenile court's jurisdictional findings, dispositional orders, and subsequent order removing the children from his care, and those orders were affirmed on appeal. (See *In re W.R.*, *supra,* B292121, B294990.)

On October 11, 2018, father underwent an Evidence Code section 730 evaluation. Dr. Sheila Morris opined that father suffered from schizoaffective disorder, bipolar type. She was concerned about his ability to care for his children, as he was not taking medications. She recommended that he receive counseling, comply with prescribed medications, take anger management and parenting classes, and submit to a follow-up evaluation in six months.

Between November 5, 2018, and January 16, 2019, father had four negative drug tests, and two positive tests for morphine. By January 2019, father had completed domestic violence, parenting, and individual counseling programs with Tarzana Treatment Center. He was not taking any psychotropic medications.

On April 3, 2019, father had his six-month psychological re-evaluation. Dr. Morris opined that father's diagnosis remained the same, but that father had improved. She recommended that father continue to receive services and treatment, but she had minimal concerns about father's ability to care for the children.

On May 1, 2019, the children were returned to father under the supervision of the Department. The court conditioned its order on father making the children available for visits with the Department, that he submit to random and on-demand drug testing, that he participate in family preservation services, and that he cooperate in getting IEP's for the children.

After father regained custody of the children, he stopped returning the Department's phone calls, and failed to submit to drug testing. He came to Department offices in June and July 2019, but he refused to provide the address where he was staying so the Department could visit him there. When the Department visited his last known address in August 2019, the social worker discovered that father had moved out six months earlier.

On September 5, 2019, the children's school contacted the Department to report that the nine- and 10-year-old boys were "in great need of support services such as mental health and tutoring." They were performing poorly both academically and behaviorally. Father refused to cooperate with the school to get services for the boys. The nine-year-old was having the most problems; walking out of class, throwing chairs, and threatening other students. Father

was not responding to the school's calls.  Father told the school that he would counsel the children himself.

The social worker met with the school principal on September 11, 2019.  The children had attended the school for the last five years.  For the last four years, father did not support his children's academic needs.  He refused to consent to the children receiving mental health and tutoring services offered by the school, was disrespectful with school personnel in front of the children, and told the children not to listen to anyone but him.

The social worker met with the nine- and 10-year-old at school, and they reported they were doing well in father's care.  She also met with father as he came to pick up the children.  Father was upset the social worker "violated his rights" by meeting with the children.  He interrogated the children, asking what they told the social worker, and told them they should not speak to anyone outside his presence.  Father walked away with the children as the social worker tried to talk to him.

Father called the social worker the next day from a blocked phone number.  He refused to provide his phone number, and when the social worker asked to schedule a visit, he said he would call back.  However, he never did.  Therefore, the Department was concerned about the children, and recommended that they be detained.  All three children were detained on October 18, 2019.

A behavioral detail report from the school reflected that between 2014 and 2019, the 10-year-old child had at least 48 disciplinary incidents, including hitting other students, refusing to comply with directions and complete assignments, throwing rocks, disrupting class, vandalizing school property, using profanity, fighting with other students, and exposing himself to other students.  Once, when the school discussed the problems with father, father recommended that they "flick" him when he

6

misbehaved. Father also accused the school of "pick[ing] on" his kids, and threatened school staff in May 2018.

The youngest child's behavioral report detailed at least 45 disciplinary incidents between 2017 and 2019, including failing to follow directions, fighting with other students, being disruptive, throwing chairs and other objects, urinating on the floor and outside in the lunch line, damaging school property, punching other students, choking another student, screaming, running out of classrooms, and sexually harassing a female student. Father refused the school's recommendation that he receive psychological services at school. Father also refused to consent to IEP services.

On October 22, 2019, the Department filed a supplemental petition under section 387, alleging that father failed to make the children available for visits by the Department, and failed to participate in drug testing and family preservation services. That same day, the Department filed a subsequent petition pursuant to section 342, alleging that father refused to cooperate with the school to obtain mental health services for his two younger boys, and that this neglect put all three sons at risk.

On October 23, 2019, the two younger boys were detained from father. His oldest son was allowed to remain in his care.

In late October and early November, the Department made multiple attempts to contact father. Father refused to speak with the Department or allow the social worker to see his 15-year-old son, who was in his care, complaining that the social worker was not the one assigned to his case. Father explained that he did not sign off on the IEP for his younger son because he did not agree the boy needed all of the recommended services, such as speech therapy. However, father claimed he had "signed papers" for the nine-year-old to receive counseling and mentoring services at school.

7

The foster mother for the younger boys reported that when they were previously in her custody, she worked tirelessly to obtain an IEP for the younger child, attending numerous meetings, but that father refused to sign the IEP.

The adjudication of the section 342 and 387 petitions took place on November 14, 22, and December 5, 2019. The juvenile court dismissed the section 387 petition without prejudice, and found the section 342 petition true as alleged.

At the December 5, 2019 disposition hearing, the court allowed the oldest child to remain in father's care, over the Department's objection.[2] The court removed the nine- and 10-year-old boys from father. The court ordered father to participate in a new Evidence Code section 730 evaluation, on-demand drug testing, parenting classes, and individual counseling. Father filed a timely notice of appeal, which we assigned case No. B304013.

On February 4, 2020, the attorney for the younger children filed a "walk on request" asking the court to limit father's educational rights, arguing that father was still refusing to consent to the children receiving necessary services at school. Father argued he would obtain services for his children, but only if they were returned to him, and alternatively asked that if his educational rights were limited, the Department be ordered to allow father to participate in the IEP meetings.

The court expressed concern that father was not cooperating with the Department or caregivers to provide the children with necessary services, and entered an order limiting father's educational rights, vesting them in the children's foster mother.

---

[2] The Department appealed this order, but dismissed its appeal.

The court's order did not specify that father would be allowed to participate in meetings.

This timely appeal followed, and was assigned case No. B304856. We ordered the two appeals consolidated.

## DISCUSSION

### 1. Removal Order

Father contends there were reasonable means to protect the children without removing them from his care, such as changing schools and ordering father to enroll the children in counseling. We are not persuaded.

A child may not be removed from a parent or guardian unless there is clear and convincing evidence of "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's [or] guardian's . . . physical custody." (§ 361, subd. (c)(1).) A juvenile court's removal order is reviewed under the substantial evidence standard of review. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.)

The academic and behavioral problems leading to the two boys' removal had persisted for many years, unabated. Father's two younger sons were completely out of control, and in need of services that father would not authorize. Father repeatedly refused offers of support from the school, and would not authorize an IEP for the younger child. There were no less drastic means to protect the children. Father had not complied with prior orders to authorize IEP's, would not make his children available to the Department, and was often hostile and uncooperative. We find substantial evidence supports the juvenile court's removal order.

9

## 2.    Educational Rights

For these same reasons, we find the court was well within its discretion to limit father's educational rights.

Section 361, subdivision (a)(1) provides that "[i]n all cases in which a minor is adjudged a dependent child of the court . . . , the court may limit the control to be exercised over the dependent child by any parent . . . .  Any limitation on the right of the parent . . . to make educational or developmental services decisions for the child shall be specifically addressed in the court order.  The limitations may not exceed those necessary to protect the child."  An order limiting a parent's educational rights is reviewed for abuse of discretion.  (*In re D.C.* (2015) 243 Cal.App.4th 41, 58.)

Father contends the order limiting his educational rights did not "clearly and specifically" set forth all the limitations on his educational rights, as it did not address his request to participate in school meetings for the children.  We are not persuaded that there was any deficiency in the court's order, which was made on a mandatory judicial council form.  The court likely concluded that father's participation would be disruptive.

Father also contends the order exceeded the limitations necessary to protect his children, reasoning that the children could have been returned to him with orders that he receive necessary services for them, or that the court should have ordered that he be allowed to participate in meetings.  Clearly, his defiance of previous orders, and failure to make the children available to the Department belie this claim.

## 3.    Dispositional Orders

Father challenges the court's dispositional orders, arguing the case plan requiring him to repeat programs he has already completed is not reasonable or necessary.

The juvenile court's broad discretion to fashion dispositional orders includes discretion to address any known deficiencies harmful to the well-being of a child.  (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.)  We will not reverse a juvenile court's determination of an appropriate disposition absent a clear abuse of discretion.  (*Ibid.*; *In re Sergio C.* (1999) 70 Cal.App.4th 957, 960.)

Although father had already participated in two Evidence Code section 730 evaluations, a parenting class, and individual counseling, it was clear that he had a lot more to learn from these programs.  On this record, we find no abuse of discretion.

**DISPOSITION**

The orders are affirmed.

GRIMES, J.

WE CONCUR:

BIGELOW, P. J.

WILEY, J.

11